IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-101610REK

| | |
|---|---|
| ROBERT J. ZAMMITO, JR.;<br>PAUL M. ZAMMITO;<br>CHRISTOPHER ZAMMITO; and<br>VALARIE A. MORDINI,<br>    Plaintiffs and Counterclaim Defendants<br><br>v.<br><br>HARRY W. HEALEY, JR., GRANTOR TRUST and<br>PETER W. HEALEY as Trustee of<br>HARRY W. HEALEY, JR., GRANTOR TRUST,<br>    Defendants and Counterclaim Plaintiffs<br><br>HARRY W. HEALEY, JR. individually, and as Trustee of<br>THE HUNTINGTON FORBES CHARITABLE<br>REMAINDER TRUST;<br><br>HUNTINGTON FORBES, LTD.;<br>STANTON CUMMINGS, LTD.;<br>PETER W. HEALEY, as Trustee of<br>THE HEALEY GRANDCHILDREN'S TRUST – II,<br>    Third Party Plaintiffs<br><br>v.<br><br>ROBERT J. ZAMMITO, SR.;<br>VALERIE L. ZAMMITO;<br>ASA HOLDING COMPANY, INC.; and<br>THE ASA HOLDINGS LP,<br>    Third Party Defendants<br><br>MELLON BANK (aka Mellon Trust of New England),<br>    Bank Trustee | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT AND THIRD PARTY PLAINTIFFS' OPPOSITION TO
MOTION OF PLAINTIFFS/COUNTERCLAIM DEFENDANTS AND THE THIRD
PARTY DEFENDANTS TO DISMISS THE CIVIL RICO CLAIMS UNDER RULE
12(b)(6)**

## Relevant Facts

In 1991, Robert Zammito ("Zammito") was the owner and operator of a family owned regional ambulance company in Southeastern Massachusetts. Later that year, Zammito hired Harry W. Healey, Jr. ("Healey") as a consultant to assist in the identification, acquisition and integration of other ambulance service companies. Healey, who has over thirty years experience in the banking industry, owned and operated a financial consulting firm known as Huntington Forbes, Ltd.

In 1995, after acquiring a number of regional ambulance service companies through Healey's advice and assistance, Zammito sold his interest in the firm as part of a ninety million dollar acquisition. Subsequently, Zammito hired Healey to continue to work with him to invest the proceeds from the sale of his ambulance service company by identifying and acquiring other businesses. As compensation, Healey received a monthly consulting fee; a ten percent commission on each new acquisition; and, an option to purchase with no time limit an interest of up to one-sixth of each business acquired at Zammito's acquisition cost. Together, Zammito and Healey identified and acquired nearly a dozen businesses and, based upon Healey's advice, Zammito's net worth increased from 1.5 million dollars in 1991 to more than 57 million dollars in 2000.

In 2002, as a result of certain business irregularities and corporate malfeasance discovered by Healey, Healey sought to terminate his professional relationship with Zammito. At the time, Zammito owed Healey more than $1,529,641 for commissions due on the acquisition of several businesses and

other sums for other professional services rendered. Healey requested payment and Zammito refused. Nevertheless, Healey terminated his professional relationship with Zammito.

Subsequently, Healey discovered that for the past four years, Robert Zammito has been engaged in a pattern of racketeering activity whereby he improperly siphoned funds from legitimate business entities and unjustly enriched himself and members of the Zammito family to the detriment of the third party plaintiffs and others. These racketeering activities included: (1) the payment of exorbitant and unearned management fees; (2) obtaining non-interest bearing advances; (3) the payment of salaries to Zammito's children and others for no-show jobs; (4) the payment of personal expenses for Zammito and members of his family; (5) the unauthorized liquidation of corporate assets and the misappropriation of the proceeds by Zammito and family members; and, (6) the misuse of corporate assets that resulted in the unjust enrichment of Zammito and members of his family. These activities are all described in Paragraphs 82 through 133 and Paragraphs 135 through 143 of the Complaint and occurred from September of 2000 to the present and continue to occur.

Zammito was able to hide his activities from the third party plaintiffs and others by refusing to make disclosure of key financial documents that recorded the unearned management fees; the no-show jobs; and, other irregularities until about one year ago when some of these documents came to light. While some of Zammito's criminal activities and corporate malfeasance may, indeed, have taken place more than four years ago, all of the racketeering activities that

formed the basis for the third party plaintiffs' civil RICO claims have occurred within the past four years.

## Legal Argument and Authorities

**I  THE PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE ACTS COMPLAINED OF ALL OCCURRED WITHIN THE LIMITATIONS PERIOD ESTABLISHED FOR CIVIL RICO ACTIONS**

### a) The Legal Standard

The motion of the Plaintiffs/Counterclaim Defendants[1] for dismissal of the civil RICO claims based on Rule 12(b)(6) must be denied, because the Defendants/Counterclaim Plaintiffs[2] have decidedly fulfilled the requirements to overcome such a result.

In their Motion and Memorandum of Law, the Zammito entities utterly fail to state the legal standard that they must overcome in order to benefit from relief under Federal Rule of Civil Procedure 12(b)(6). In determining whether to grant relief to a defendant under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Calderon-Ortiz v. Laboy-Alvarado*, 300 F.3d 60, 63 (1st Cir. 2002) (quoting *SEC v. SG Ltd.*, 265 F.3d 42, 46 (1st Cir. 2001)). Accordingly, "[i]f the facts contained in the complaint, viewed in this favorable light, justify recovery under *any* applicable legal theory," dismissal is not appropriate. *Calderon-Ortiz, id.* (emphasis added); see also *Campagna v. Massachusetts Department of Environmental Protection*, 334 F.3d 150, 154 (1st Cir. 2003).

---

[1] Plaintiffs/Counterclaim Defendants are further described herein as "the Zammito entities" as suggested in footnote 1 in the Memorandum of Law in Support of Motion of Plaintiffs/Counterclaim Defendants to Dismiss the Civil RICO Claims Under Rule 12(b)(6).
[2] Defendants/Counterclaim Plaintiffs are further described herein as "Healey" as suggested in footnote 1 in the Memorandum of Law in Support of Motion of Plaintiffs/Counterclaim Defendants to Dismiss the Civil RICO Claims Under Rule 12(b)(6).

4

### b) The Statute of Limitations Governing Civil RICO Actions

The United States Supreme Court has established a four-year limitations period for civil RICO claims. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987).[3] The *Agency-Holding* decision, however, did not decide when the limitation period begins to run.

Contrary to the Zammito entities' rigid characterization of federal law on the application of the four-year limitations period, the Supreme Court has "not... settle[d] upon a final rule..." *Rotella v. Wood*, 528 U.S. 549, 554 n. 2 (2000). Thus, although *Rotella* rejected the applicability of the "injury and pattern discovery rule" (also known as a "delayed discovery rule"), neither did it decide that a strict "injury discovery rule" – starting the clock when a plaintiff knew or should have known of his injury – was the correct formulation. Even assuming *arguendo* that a strict "injury discovery rule" applies to a RICO violation in the First Circuit, the Zammito entities cannot possibly win the day in a Rule 12(b)(6) motion.

### c) The Event Selected By Plaintiffs To Support Their Statute of Limitations Argument Does Not Give Rise To a Civil RICO Violation or Any Other Violation of Law

The Zammito entities, in their simplistic analysis of the elements of a valid RICO claim, wrongfully attempt to focus on an alleged statute of limitations triggering event that cannot possibly give rise to a RICO violation, or to any other violation of law. The event cited by the Zammito entities is Zammito's January 1995 proposal that Healey defer a payment of $212,000 from escrow funds "until a reasonable time after completion of the merger" between two businesses.

---

[3] Because the RICO statute does not contain an express limitations provision, the United States Supreme Court used the Clayton Act (15 U.S.C. §15b) as an analogous guide in choosing the four-year period.

(¶38, Defendants' Answer, Counterclaims and Third Party Complaint ("Third Party Complaint")). By any account, a promise to pay money later that is accepted by the other party is not a violation of anything. Only when a bargained for and agreed upon promise is broken can *any* violation of statutory or common law arise. The Zammito entities further note that during October 1995 Zammito requested, and Healey agreed to, continued deferment of the remaining percentage of the $212,000 payment "until the release of a portion of the escrow funds two years after the closing date." (¶45, Third Party Complaint).

The Zammito entities conceal – by failing to mention to the Court – the following crucial facts that amplify the deferment of payment issue. The specific reason that an escrow fund was established for two to three years after the business merger was "to provide coverage against potential Medicare challengers for services rendered by ASA-Inc prior to the AMR-Inc purchase." (¶44, Third Party Complaint). In 1996 two former ASA-Inc employees initiated a whistle-blowing *qui tam* action alleging fraudulent Medicare billing practices during the time that Zammito or the Zammito family had direct control of the former company as sole owners of ASA-Inc. Accordingly, in September 1996 the Office of the U.S. Attorney initiated a fraud investigation focusing on ASA-Inc's fraudulent Medicare billing practices. (¶¶57-58, Third Party Complaint). Zammito discussed the matter with Healey and falsely stated (unbeknownst to Healey) that ASA-Inc had followed industry standards when billing Medicare and that any misbilling was the result of mistake and negligence in data entries. Zammito successfully hid his fraud from Healey and others, as he had been able

6

to hide it from the government until the insiders' *qui tam* action. (¶60, Third Party Complaint).

On or about September 26, 1997 AMR-Inc (the surviving entity in the merger) submitted a claim against the escrow account and instructed the escrow agent not to release any funds to Zammito during the pending investigation. (¶59, Third Party Complaint). This occurred a month before October 1997, when Zammito would have paid some of the escrow funds to Healey by prior agreement but for the encumbering of the money. Zammito and Healey had agreed that the latter would receive escrow money upon "the release of a portion of the escrow funds two years after the closing date". But beginning approximately on September 26, 1997, no payment could be made to Healey – or anyone else – because the escrow funds could not be released until the government investigation had concluded.

The escrow funds remained encumbered until June 2002, when AMR-Inc executed a settlement and release agreement with the United States Department of Justice and Department of Health and Human Services that revealed – for the first time – that ASA-Inc had committed extensive Medicare fraud in its billing practices during the years that Zammito was the sole owner of ASA-Inc. (¶111, Third Party Complaint). It was only subsequent to June 2002 that Healey was "injured" – under any statutory or common law theory – in the escrow fund transaction.[4] As part of the Third Party Complaint allegations, this is well within

---

[4] The Zammito entities allege, in footnote 4 of their Memorandum of Law, that Healey had an "apparent lack of interest in discovering why he was not receiving" a payment from the escrow fund and that he "took no action to discover why he was not receiving" it. These characterizations are untrue and make no sense when the full story is told, as it is herein.

*any* statute of limitations – be it three years for a tort, four years for RICO violation, or six years for contractual causes of action.

### d) The Actions Which Give Rise To The Third Party Plaintiffs' Civil RICO Claims All Occurred Within The Past Four Years

The Zammito entities wrongly presume (in footnote 4 of their Memorandum of Law) that Healey necessarily must argue that fraudulent concealment saves the day for the supposedly time-barred RICO claim. Under the above-described analysis, however, fraudulent concealment is not even a necessary quiver in Healey's bow to defeat a Rule 12(b)(6) motion. Nevertheless, it must be noted that since the United States Supreme Court *Rotella* opinion, the First Circuit has ruled that "equitable tolling doctrines" still apply to civil RICO claims. *In re New England Life Insurance Company Sales Practices Litigation v. New England Life Insurance Co.*, 346 F.3d 218 at 222 (1st Cir. 2003). The *New England Life Insurance* opinion quoted *Rotella* in support of its conclusion: "In rejecting pattern discovery as a basic rule [for the RICO statute of limitations], we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling....". *Rotella v. Wood*, 528 U.S. 549, 560-61 (2000).[5]

In contrast to the Zammito entities' tortured RICO analysis, Healey's RICO claims are correctly stated – and dated – in Count II of the Third Party Complaint.

---

[5] The case of *Hodas v. Sherburne, Powers & Needham, P.C.*, 938 F.Supp. 60, 63 (D. Mass. 1996), cited by the Zammito entities in their Memorandum of Law, actually supports the legal theory of fraudulent concealment, assuming *arguendo* that it were even necessary to the success of any of Healey's claims. *Hodas* states: "To invoke the doctrine of fraudulent concealment, a plaintiff must plead and prove three elements: '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.'" *Hodas* at 63 (quoting *Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir. 1984), cert. denied, 470 U.S. 1056 (1985)).

As the Complaint clearly states, Zammito, and others have conducted and continue to conduct a "pattern of racketeering activity" by which they have improperly siphoned funds from legitimate business entities and unjustly enriched themselves to the detriment of the third party plaintiffs and other minority owners. These racketeering activities included: 1) the payment of exorbitant and unearned management fees; 2) obtaining non-interest bearing advances; 3) the payment of salaries to Zammito's children and others for no-show jobs; 4) the payment of personal expenses for Zammito and members of his family; 5) the unauthorized liquidation of corporate assets and the misappropriation of the proceeds by Zammito and family members; and, 6) the misuse of corporate assets that resulted in the unjust enrichment of Zammito and members of his family. These activities are all described in Paragraphs 82 through 133 and Paragraphs 135 through 143 of the Complaint and occurred from 2000 to the present and continue to occur.

Paragraph 140 also specifically describes several violations of mail fraud (18 U.S.C. §1341) and wire fraud (18 U.S.C. §1343) both of which are described in 18 U.S.C. §1961(1) as racketeering activity. These include Zammito's use of the mail to mislead shareholders and improperly solicit additional capital contributions among other racketeering activities. All of the racketeering activities alleged in Paragraph 140 occurred between September of 2000 and November 26, 2002. Thus, according to the Complaint, all of the racketeering acts occurred within the past four years and constitute a pattern of racketeering and other improper activity which continues to the present.

None of this information was available to Healey until after September 2000, and, in fact, much remains unavailable to date because Zammito, through his agents, continues to refuse to provide sufficient accounting to Healey to determine the true extent of the RICO violations, fraud, and other corporate improprieties that entitle him and other Third Party Plaintiffs to relief in this matter.

## Conclusion

For all of the reasons stated herein, the Plaintiffs/Counterclaim Defendants' motion to dismiss the civil RICO claims pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied.

## Request for Oral Argument

Pursuant to Local Rule 7.1(D), defendant and third party plaintiffs believe that oral argument may assist the Court and wish to be heard if the Court concludes that there should be a hearing.

> Respectfully submitted;
>
> THE DEFENDANTS,
> COUNTERCLAIM PLAINTIFFS, and
> THIRD PARTY PLAINTIFFS
>
> By their attorneys:
>
> /s/ Stephen J. Lyons
> Stephen J. Lyons
> (BBO#309840)
> KLIEMAN, LYONS, SCHINDLER
>   & GROSS
> 21 Custom House Street
> Boston MA 02110
> Telephone: 617.443.1000

Dated: February 25, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail and in accordance with the requirements of Local Rule 7.1(B)(2) on February 25, 2004.

*/s/ Stephen Lyons*
Stephen J. Lyons