IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-101610REK

ROBERT J. ZAMMITO, JR.;
PAUL M. ZAMMITO;
CHRISTOPHER ZAMMITO; and
VALARIE A. MORDINI,
  Plaintiffs and Counterclaim Defendants

v.

HARRY W. HEALEY, JR., GRANTOR TRUST and
PETER W. HEALEY as Trustee of
HARRY W. HEALEY, JR., GRANTOR TRUST,

  Defendants and Counterclaim Plaintiffs

HARRY W. HEALEY, JR. individually, and as Trustee of
THE HUNTINGTON FORBES CHARITABLE
REMAINDER TRUST;

HUNTINGTON FORBES, LTD.;
STANTON CUMMINGS, LTD.;
PETER W. HEALEY, as Trustee of
THE HEALEY GRANDCHILDREN'S TRUST – II,
  Third Party Plaintiffs

v.

ROBERT J. ZAMMITO, SR.;
VALERIE L. ZAMMITO;
ASA HOLDING COMPANY, INC.; and
THE ASA HOLDINGS LP,
  Third Party Defendants

MELLON BANK (aka Mellon Trust of New England),
  Bank Trustee

## DEFENDANTS' STATEMENT UNDER LOCAL RULE 7.1(A)(2)

I, Stephen J. Lyons, hereby depose and state as follows.

1. I am an attorney admitted to practice law in the Commonwealth of Massachusetts and within the United States District Court for the District of Massachusetts and am counsel to the defendants and counterclaim plaintiffs, herein and make this affidavit pursuant to the requirements of Local Rule 7.1(A)(2).

2. I hereby state that I have attempted to confer in good faith with counsel for the plaintiff in the above referenced matter concerning the within motion.

3. In particular, after being notified of the sale and of the fact that the sellers were opposed to any distribution of the sale proceeds to my clients, I wrote to counsel for the plaintiffs, Kevin Considine, Esquire, on March 8, 2005 requesting that he clarify his clients' position regarding distribution of the sale proceeds. I made it clear in that letter that my client was opposed to any attempt to confiscate proceeds of the sale which rightfully belongs to him and requested that he reply in writing to my request for clarification no later than March 10, 2005. Further, I state that if I did not receive a reply by that time, I had been "directed to immediately take whatever steps may be necessary to protect my client's rights". Neither Attorney Considine nor Attorney Mitchelson replied to my letter. A copy of my letter of March 8, 2005 is attached hereto as Exhibit A.

4. On April 18, 2005, after being notified that the sellers would seek to prevent the distribution of any of the sale proceeds to my client, I again attempted in good faith to confer with counsel for the plaintiff, Kevin Considine,

Esquire, by writing a letter which again requested that he clarify his clients' position with respect to the distribution of the sale proceeds. I indicated once again that the sale was imminent and that I required immediate clarification of his intentions with respect to distribution of the sale proceeds. Again, neither Attorney Considine nor Attorney Mitchelson replied to my letter. A copy of my letter of April 18, 2005 is attached hereto as Exhibit B.

     5.    When I received no reply to either my letter of March 8, 2005 or April 18, 2005 and because I was informed by counsel for the buyer that the sale was imminent and could possibly occur on or before April 22, 2005, I was forced to abandon any further attempts to confer with counsel for the plaintiffs and filed the within motion in order to protect my client's legal rights.

Signed this 20th day of April, 2005, under the pains and penalties of perjury.

_____
Stephen J. Lyons

3



# KLIEMAN, LYONS, SCHINDLER & GROSS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
COUNSELLORS AT LAW

STEPHEN J. LYONS
JAMES C. GROSS
THOMAS C. BAILEY
ANNE J. WHITE
JONATHAN S. SCHINDLER
JANET KENTON-WALKER

OF COUNSEL
RIKKI J. KLIEMAN
ROMEO R. ADAMS

21 CUSTOM HOUSE STREET
BOSTON, MASSACHUSETTS 02110
TELEPHONE: 617-443-1000
TELEFAX:    617-443-1010

JOSEPH I. SCHINDLER
(1952-1999)

JAMES E. LYONS
(1921-1993)

**VIA FACSIMILE AND MAIL**

March 8, 2005

Kevin M. Considine, Esquire
Kevin M. Considine, P.C.
One Boston Place, 28th Floor
Boston, MA 02108

Re:   Robert Zammito, et als. v. Harry W. Healey, Jr., et als
      Civil Action No: 04-10161-REK

Dear Kevin:

I am writing in follow up to our recent discussions wherein you informed me about the pending sale of NCPS/NDVS to E-Fund. You may also consider this letter as my attempt to confer with you in good faith in order to resolve a matter in dispute pursuant to Local Rule 7.1 (A) (2).

*The Proposel Sale*

You have informed me that an offer to purchase NCPS/NDVS in the amount of approximately 20 million dollars has been received from E-Fund. While you did not disclose the anticipated date of sale, we learned at the deposition of Daniel Lalumiere last Friday that the expected closing will occur on Tuesday, March 15, 2005.

*Mr. Healey's Interest In NCPS/NDVS*

As you know, as part of his agreement for compensation with your clients, Mr. Healey was granted an option to purchase a 1/6[th] ownership interest in NCPS/NDVS. Shortly after its acquisition by your clients for the sum of 2.25 million dollars in 1989, Mr. Healey exercised his option to acquire an ownership position and since that time has been the owner of 16 shares of stock in NCPS/NDVS.

KLIEMAN, LYONS, SCHINDLER & GROSS

Kevin M. Considine, Esquire
March 8, 2005
Page Two

Mr. Healey acquired this equity position by investing the sum of $225,000 owed to him for consulting services rendered and executing eight (8) separate promissory notes. These notes included four (4) non-recourse notes each in the amount of $25,000 and four (4) recourse notes each in the amount of $12,500. Thus, Mr. Healey's total investment equaled the sum of $375,000. This position is equal to 16 percent ownership interest in NCPS/NDVS.

### The Conversion of NCPS/NDVS to Business Trusts

In January of 2001, the NCPS/NDVS companies were converted to business trusts. As you know, it has been alleged by my client that this conversion was done fraudulently and without the knowledge or consent of Mr. Healey. It has been further alleged that the purported signatures of Peter Healey on the conversion documents are not genuine and have been forged (even a cursory comparison of these signatures with the genuine signatures of Peter Healey appearing on the promissory notes would appear to corroborate this fact). Nevertheless, Mr. Healey's 16.67 percent ownership interest in the resulting business trusts would remain undisturbed.

### Mr. Healey's Rights to the Sale Proceeds

It is our position, therefore, that even if the conversion of the business trusts is not found to be fraudulent, Mr. Healey is entitled to receive 16 percent of the proceeds from the sale of NCPS/NDVS to E-Fund. This equals the sum of approximately 3.34 million dollars depending upon the final sale price. However, when we met on March 2nd you took the position that Mr. Healey would be entitled to no more than 12.42 percent of the proceeds from the sale of NCPS/NDVS.

At that time, you took the position that, in your view, Mr. Healey's position should be reduced by 4.25 percent because he had "defaulted" on his obligations under the promissory notes. You seemed to be saying that despite Mr. Healey's defense that the monies misappropriated by your clients materially altered the nature of his investment and thus excused his performance and the fact that your clients have not yet obtained a finding or verdict in their favor, they have the right to receive a portion of the sale proceeds due to Mr. Healey. We respectfully and strongly disagree.

KLIEMAN, LYONS, SCHINDLER & GROSS

Kevin M. Considine, Esquire
March 8, 2005
Page 3

*The Promissory Notes*

A review of the plaintiff's complaint discloses that your clients have sought: 1) monetary damages in the amount of $225,000; 2) issuance of a declaratory judgment allowing the transfer of all stock held by Mr. Healey to your clients and allowing that they receive any income thereon as collateral; 3) an attachment in the amount of $225,000; and, attorneys fees. The demand for declaratory relief seems to be based upon language contained in the recourse notes to this effect.

However, your stated intention to unilaterally reduce my client's share of the sale proceeds from 16.67 percent to 12.42 percent and appropriate the difference is not only premature, it has no basis in law or fact. Let me briefly review our reasoning for you.

First, the collateral pledged under the notes was stock in the NCPS/NDVS corporations *not* shares in the business trusts. The exchange is alleged to have occurred on or about January 1, 2001. The alleged default occurred on October 31, 2003. Thus, the right of the note holders to act as the proxy and attorneys-in-fact for Mr. Healey in executing the exchange could not arise until after the alleged default occurred. However, the execution of the Exchange Agreement was not authorized by Mr. Healey and is one of the issues that must be decided at trial. Thus, any attempt to exercise the rights of the lien holders under the notes does not relate to the interest in the business trusts and is at best premature.

Secondly, even assuming that the plaintiffs should establish at trial that Mr. Healey is in default and that the plaintiffs are entitled to the remedies set forth in the notes, *which we do not concede*, your stated intension to confiscate 4.25 percent of the sale proceeds (which amounts to approximately $850,000) grossly exceeds the remedies available to the plaintiffs under the terms of the notes and at law. By their terms, the right of transfer is expressly limited to occurrence and continuation of default. It is a temporary right, enabling the holder to collect income under the stock and apply it directly to any outstanding obligation or hold same as additional collateral. Once the default is cured, and the holders may cure it to the extent that income is applied to any outstanding obligation, ownership must revert to the borrower. Thus, while the plaintiffs may arguably have the right to set aside an amount equal to $225,000 and apply same to the

KLIEMAN, LYONS, SCHINDLER & GROSS

Kevin M. Considine, Esquire
Marc 8, 2005
Page 4

borrower's obligations or hold it as collateral, they do not have the right to appropriate 4.25 percent of Mr. Healey's ownership interest.

In this connection it is important to also point out that under the terms of the notes, the holders' right to collect interest is also limited to the maximum statutory rate. This means that even if the plaintiffs were to prevail, the maximum interest recoverable equals 12 percent. Likewise, any attorneys fees must be *reasonable*. This can only be determined by a court of competent jurisdiction but it is difficult to imagine an award of attorneys fees in view of the fact that your clients chose litigation over financial disclosure and the repayment of monies misappropriated by them. Again, to presuppose that the plaintiffs will collect interest or attorneys fees, like the assumption that they will prevail upon the merits is highly premature.

Finally, your intention to confiscate a portion of Mr. Healey's share of the sale proceeds overlooks the fact that we dispute the debt and have raised substantial defenses and counterclaims to this action which have yet to be adjudicated. However, in addition to our counterclaims for monies owed for consulting services rendered which amount to more than 1.5 million dollars, our forensic audit has determined that more than 1.9 million dollars has been misappropriated from NCPS/NDVS alone between 2000 and 2004. These funds are provably in the possession of your clients and Mr. Healey's share alone amounts to more than $317,000 which exceeds any amount your clients might hope to recover, including interest and reasonable attorneys fees, on the notes.

Because our conversation about these matters last week came in the context of settlement negotiations and I may be mistaken about your intentions regarding distribution of the sale proceeds, I require clarification of your position with respect to the sale of NCPS/NDVS. If I am mistaken or have misinterpreted your position in some way, please let me know. If, on the other hand, I understand your position accurately, please confirm this for me.

As stated above, we cannot permit any attempt to confiscate proceeds of the sale which rightfully belong to Mr. Healey. We believe there can be no dispute but that he is entitled to receive his full 16.67 percent share. And, while I have no desire to do anything which might interfere with the sale of NCPS/NDVS to E-Fund, if it is your intention to reduce Mr. Healey's share of the sale proceeds, I will not hesitate to seek appropriate judicial relief including the

KLIEMAN, LYONS, SCHINDLER & GROSS
Kevin M. Considine, Esquire
March 8, 2005
Page 5

issuance of a temporary restraining order or such other relief as may be necessary.

    For this reason, and in view of the fact that the sale of NCPS/NDVS is expected to take place on Tuesday, March 15, 2005, I respectfully request the favor of a written reply on or before the close of business on Thursday, March 10, 2005. If I do not receive a reply by that time, I have been directed to immediately take whatever steps may be necessary to protect my client's rights.

Very truly yours,


Stephen J. Lyons

SJL/ mtl

Case 1:04-cv-10161-REK    Document 34    Filed 04/20/2005    Page 10 of 13

## KLIEMAN, LYONS, SCHINDLER & GROSS

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

COUNSELLORS AT LAW

STEPHEN J. LYONS
JAMES C. GROSS
THOMAS C. BAILEY
ANNE J. WHITE
JONATHAN S. SCHINDLER
JANET KENTON-WALKER

OF COUNSEL
RIKKI J. KLIEMAN
ROMEO R. ADAMS

21 CUSTOM HOUSE STREET

BOSTON, MASSACHUSETTS 02110

TELEPHONE: 617-443-1000

TELEFAX:      617-443-1010

JOSEPH I. SCHINDLER
(1952-1999)

JAMES E. LYONS
(1921-1993)

### VIA FACSIMILE AND MAIL

April 18, 2005

Kevin M. Considine, Esquire
Kevin M. Considine, P.C.
One Boston Place, 28th Floor
Boston, MA  02108

Re:   Robert Zammito, et als. v. Harry W. Healey, Jr., et als.
      Civil Action No: 04-10161REK

Dear Kevin:

I am writing because it would appear that the sale of NCPS/NDVS will occur later this week and I am concerned about your intentions regarding the distribution of the sale proceeds associated with that transaction.

As you know, it is our position that Mr. Healey via the Grantor Trust is the owner of 16 percent of NCPS/NDVS and that he has owned 16 percent of NCPS/NDVS since October of 1999 when he acquired a one-sixth share of your client's interest in NCPS/NDVS. He was issued 16 shares of stock. The trust, though fraudulently created, acknowledges his 16 percent ownership interest. His ownership interest has been acknowledged by the Zammitos in various documents and correspondence and in their depositions. Even the Asset Purchase Agreement confirms this ownership interest. In short, until recently, I was not aware of any dispute over the fact that Mr. Healey was the owner of 16 percent of NCPS/NDVS.

However, on March 7, 2005, after the offer from eFunds Corporation to purchase NCPS/NDVS for the sum of 20 million dollars was disclosed to me for the first time, you informed me that it would be your position that Mr. Healey's share of the sale proceeds should be reduced 40 percent (from 16 percent to 10 percent) on the grounds that Mr. Healey had defaulted on the promissory notes and had, therefore, forfeited a pro rata share of his interest in NCPS/NDVS. We, of course, disagreed strongly with this position and I wrote to you on March 8,

KLIEMAN, LYONS, SCHINDLER & GROSS

Kevin M. Considine, Esquire
April 18, 2005
Page Two

2005 explaining that under the terms of the promissory notes your clients' rights (assuming they were to prevail at trial) were limited to principle and interest and that there was simply no right or legal basis for appropriating 6 percent of my client's ownership interest in NCPS/NDVS. Although I requested that you respond and clarify your position, you did not reply.

Later, on April 11, 2005 and again in the context of a discussion related to the proposed sale of NCPS/NDVS, you modified your previous position and informed me that my client's remaining 10 percent share in NCPS/NDVS was also forfeit because the $225,000 credited to Mr. Healey in 1996 which he used to purchase his interest in NCPS/NDVS was a "voidable commission". This argument is similar to the argument you have made with respect to the claim for unpaid bonuses or commissions in the amount of 1.5 million dollars. As I understand it, your position is that those claims are barred pursuant to Chapter 259, Section 7 which requires that the commissions paid to a "broker" or a "finder" in connection with the sale or acquisition of a business must be in writing.

While I have great difficulty with your argument that Chapter 259, Section 7 excuses your client from paying the 1.5 million dollars in bonuses or commissions owed to Mr. Healey, I have even more difficulty seeing the legal basis or logic in that argument applying retroactively to compensation that was credited to Mr. Healey in 1996 and nearly five years after he was issued stock reflecting his 16 percent ownership interest in NCPS/NDVS. Frankly, this most recent modification of your position took me somewhat by surprise since it was not raised in any of the pleadings and it would appear that any such claim, if one exists, would be time barred.

Perhaps, I have misstated or misunderstood your position in some way. I could find no case law or other legal authority to support it and you have provided me with none despite my request that you do so. However, since these theories you have advanced fundamentally affect my client's right to 16 percent of the sale proceeds of NCPS/NDVS and since that sale is imminent, I respectfully

KLIEMAN, LYONS, SCHINDLER & GROSS

Kevin M. Considine, Esquire
April 18, 2005
Page 3


request immediate clarification of your intentions with respect to distribution of those sale proceeds.

Very truly yours,



Stephen J. Lyons

SJL/pjk