UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10161-REK

ROBERT J. ZAMMITO, JR., )
PAUL M. ZAMMITO, )
CHRISTOPHER ZAMMITO and )
VALARIE A. MORDINI, )
    Plaintiffs, )
        v. )
HARRY W. HEALEY, JR., GRANTOR TRUST )
and PETER W. HEALEY, as Trustee of )
HARRY W. HEALEY, JR., GRANTOR TRUST, )
    Defendants )
)
HARRY W. HEALEY, JR., individually, and as )
Trustee of THE HUNTINGTON FORBES )
CHARITABLE REMAINDER TRUST, )
HUNTINGTON FORBES, LTD., )
STANTON CUMMINGS, LTD., )
PETER W. HEALEY, as Trustee of )
THE HEALEY GRANDCHILDREN'S TRUST – II, )
    Third-Party Plaintiffs, )
    Third-Party Defendants in Counterclaim )
        v. )
ROBERT J. ZAMMITO, SR., )
VALERIE L. ZAMMITO, )
ASA HOLDINGS, INC., and )
ASA HOLDINGS LP, )
    Third-Party Defendants, )
    Third-Party Plaintiffs in Counterclaim, )
    Third-Party Plaintiffs, )
        v. )
JOHN A. MALLOY, III and )
WILLIAM R. HEALEY, )
    Third-Party Defendants )
)
MELLON BANK )
(a/k/a Mellon Trust of New England), )
    Bank Trustee. )

**PLAINTIFFS AND THIRD PARTY DEFENDANTS' OPPOSITION TO
DEFENDANTS' MOTIONS "FOR JUDGMENT ON THE PLEADINGS AND/OR
TO DISMISS" AND HARRY W. HEALEY, JR.'S "MOTION FOR SUMMARY
JUDGMENT AND/OR TO DISMISS"**

Robert J. Zammito, Jr., Paul M. Zammito, Christopher Zammito, Valarie A. Mordini, Robert J. Zammito, Sr., Valerie L. Zammito (collectively the "Zammitos"), ASA Holding Co., Inc. and the ASA Holdings L.P. hereby submit their opposition to following motions (collectively, the "Motions to Dismiss"):

1. Motion for Judgment on the Pleadings and/or to Dismiss as to John A. Malloy, III with the Statement of Reasons and Legal Authorities;

2. Motion for Judgment on the Pleadings and/or to Dismiss as to Harry W. Healey, Jr. Grantor Trust with the Statement of Reasons and Legal Authorities;

3. Motion for Judgment on the Pleadings and/or to Dismiss as to Healey Grandchildren's Trust-II with the Statement of Reasons and Legal Authorities;

4. Motion for Judgment on the Pleadings and/or to Dismiss as to Peter W. Healey with the Statement of Reasons and Legal Authorities;

5. Motion for Judgment on the Pleadings and/or to Dismiss as to Huntington Forbes Ltd. with the Statement of Reasons and Legal Authorities;

6. Motion for Judgment on the Pleadings and/or to Dismiss as to Stanton Cummings Ltd. with the Statement of Reasons and Legal Authorities; and

7. Motion for Summary Judgment and/or to Dismiss Counterclaims as to Harry W. Healey, Jr. with Statement of Reasons and Legal Authorities.

The Motions to Dismiss are yet another instance in this litigation where Harry W. Healey, Jr. ("Healey") and related persons and entities (collectively referred to as the "Defendants") make claims in contravention of both established facts and their own sworn testimony. As set forth in greater detail below, the Motions to Dismiss are without merit and should be denied.

## RELEVANT BACKGROUND

Throughout this entire litigation, Healey has claimed that he, in his individual capacity, entered into an oral agreement with Robert J. Zammito, Sr., wherein Healey would receive ten thousand ($10,000.00) dollars per month paid to his consulting firm, Stanton Cummings, Ltd. ("Stanton Cummings"); a ten (10%) percent commission paid to him which was based upon the acquisition cost paid for a company and the ability, with no time limit, for Healey to purchase up to 1/6 of the acquired company. *See Affidavit of Harry W. Healey, Jr. dated January 22, 2004, (hereinafter referred to as "Healey Aff.") at ¶49.* Healey has staunchly maintained that his agreement was solely with Robert J. Zammito, Sr. even though, in reality, it was Robert J. Zammito, Jr., Paul M. Zammito, Christopher Zammito, Valarie A. Mordini (the "Zammito Children") who eventually acquired these companies. *See Affidavit of Timothy M. Mitchelson, Esq. (hereinafter referred to as "Mitchelson Aff.") at Ex. A (11/29/04 Deposition of Harry W. Healey, Jr. (hereinafter referred to as "Healey Depo.") at 138:8-18).*

The first of the Zammito Children's acquisitions to occur pursuant to the alleged oral agreement was their purchase of National Check Protection Service, Inc./National Data Verification Service, Inc. (hereinafter referred to as "NCPS/NDVS"). For that purchase, Healey claims to have received a ten (10%) percent commission based upon the Zammito Children's acquisition price of $2.25 million dollars. *See Mitchelson Aff. at Ex. A (11/29/04 Healey Depo. at 147:8-17).* Four years later, with the potential of a NCPS/NDVS sale looming, Healey bought a 16% percent interest in NCPS/NDVS. *Id. at 148:18-149:2.* Healey's 16% interest in NCPS/NDVS was held in the name of the Harry W. Healey, Jr. Grantor Trust ("Grantor Trust"). *See Healey Aff. at ¶74.*

3

To finance his acquisition of NCPS/NDVS, Healey directed the Grantor Trust to execute and deliver promissory notes to the Zammito Children. *See Mitchelson Aff. at Ex. A (11/29/04 Healey Depo at 149:14-23)*. The promissory notes that Grantor Trust issued to the Zammito Children were due and payable by October 23, 2003. Prior to that date, neither Healey nor any of the other Defendants in this litigation had ever raised any issues with the Zammito Children, or anyone else, regarding management fees. Indeed, even though he was aware of the management fees by September 2001, Healey never questioned them.[1] *See Healey Aff. at ¶102*. Yet, when the NCPS/NDVS promissory notes came due in 2003, Healey and the other Defendants suddenly made various allegations relating to the management fees; including that the Zammitos had engaged in fraud and they were involved in a racketeering scheme. *See Defendants' Counterclaim and Third Party Complaint*.

As set forth in the Zammitos' "Reply to Counterclaim, Third Party Answer and Third Party Complaint" (the "Third Party Complaint"), the Zammitos contended that they agreed to allow Healey to purchase 1/6 of the companies the Zammito Children acquired, but he and his various entities failed to adhere to the agreement by not making any of the required payments. *See Third Party Complaint at Counts I, II, IV, VIII, and VIII(sic)*. In addition, the Defendants who were obligated to the Zammito Children for acquiring ownership in the companies (namely Healey, his son Peter Healey in his capacity as Trustee of the Grantor Trust and as Trustee of the Healey Grandchildren's Trust-II, the

---

[1] Healey first claimed to know of management fees in May 2001. *See Healey Aff. at ¶105*. As set forth in much greater detail in the Memorandum of Law in Support of the Zammitos Motion for Summary Judgment, Healey was, in fact, the architect of the management fee payment and was made aware of their commencement by his receipt of monthly financial statements from NCPS/NDVS. *See Mitchelson Aff. at Ex. A (11/30/04 Healey Depo at 79:2-80:14)*.

4

Trusts themselves, and Stanton Cummings) were liable for abuse of process in asserting baseless claims against the Zammitos to avoid their debt obligations. *Id. at Count V.* This same group also violated G.L. c. 93A by deliberately entering into loan obligations with the Zammito Children with no intention of repaying. *Id. at Count VI.*

As set forth below, the Zammitos' Third Party Complaint withstands the Defendants' Motions to Dismiss and they should be denied.

## ARGUMENT AND AUTHORITIES

I.   *Under Either Dispositive Standard, The Third Party Complaint Survives.*

In deciding on a motion under Fed.R.Civ.P. 12(b)(6) or 12(c), "the Court must view the facts presented in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." GE Capital Mortgage Services, Inc. v. Estate of Lugo, 319 F.Supp.2d 127 (D. Mass. 2004). The same standard holds true for a deciding a motion under Fed.R.Civ.P. 56. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)("the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *see also* Rodriguez-Cuervos v. Wal Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999)(in ruling on a summary judgment motion, a court views "the facts in the light most favorable to the non-moving party.").

The Third Party Complaint puts forth genuine issues of material facts that need to be tried. As such, the Motions to Dismiss should be denied.

*II.    The Motion to Dismiss of John A. Malloy, III Has Already Been Adjudicated.*

In his Motion to Dismiss, John A. Malloy, III, ("Malloy") claims that he is entitled to "judgment on the pleadings, or in the alternative, to dismissal of the complaint against him on the grounds that while he is named as a third party defendant in the caption . . . none of the nine counts therein apply to John A. Malloy." *See Malloy Motion at p. 4.* Malloy, and his counsel, seemingly forget that they already filed this exact same motion on August 20, 2004.[2] At that time, the Zammitos opposed Malloy's motion on the basis that Malloy was a proper third party, and was named in the Third Party Complaint because he is a Trustee of the Grantor Trust. As set forth in the Zammitos' Opposition, non-business trusts are immune from suit but must instead be sued via their trustees. *See Mitchelson Aff. at Exhibit E. (Zammitos' Opposition to John A. Malloy III's August 20, 2004 "Motion For Judgment On Pleadings And/Or To Dismiss" at p. 3).*

In the face of the legally sound and factually logical opposition, Malloy retreated from his claim that he should be dismissed from this litigation. In open court during a status conference on September 16, 2004, counsel for Malloy withdrew Malloy's Motion to Dismiss. According to the docket, "Parties stated that there is no claim against Malloy personally, but Malloy will remain party to the litigation in his capacity as Trustee of the Healey Grantor Trust. Parties stated that one claim remained against Malloy in his capacity as trustee. Motion to Dismiss and for Judgment on the Pleadings [by Malloy] is withdrawn." *See Mitchelson Aff. at Ex. F.*

---

[2] Malloy also filed his Answer on this date.

6

Not surprisingly, Malloy makes no mention of the original motion, or its withdrawal, in his current Dispositive Motion.[3] The basis for the Zammitos' opposition remains basically the same; namely that Malloy is a necessary party to this litigation as he is an admitted trustee of the Grantor Trust, the maker of promissory notes to the Zammito Children. Thus, Malloy's attempt to dismiss himself from this litigation will prejudice the Zammitos' ability to obtain a complete judgment against the Grantor Trust. In addition, the fact that the Grantor Trust and one of its Trustees [Peter W. Healey] chose to file a baseless counterclaim rather than pay these promissory notes makes Malloy, as Trustee of the Grantor Trust, accountable for the Zammitos' abuse of process claim. Just as it was almost a year ago, Malloy's Dispositive Motion is without merit and should, therefore, be dismissed.

III.   *Healey, Peter W. Healey, The Grantor Trust, Stanton Cummings And The Healey Grandchildren's Trust-II Are Liable For Abuse of Process.*
**(Count V of the Third Party Complaint)**

At one point or another, Healey, the Grantor Trust, Stanton Cummings and the Healey Grandchildren's Trust-II (the "Grandchildren's Trust")[4] allegedly acquired an interest companies that the Zammito Children purchased. *See Healey Aff. at ¶ 66 (Stanton Cummings acquires 1/6 ownership of Colornet Graphics), ¶ 74 (Healey acquires 1/6 interest in NCPS/NDVS and transfers it to the Grantor Trust) and ¶ 93 (Healey acquires 1/6 interest in Fleet Environmental and transfers it to the Grandchildren's Trust).* Although they became minority owners in these companies, none of these Defendants ever paid anything for their ownership. Peter Healey has

---

[3] The two motions are exactly the same.

[4] Peter W. Healey is a Trustee of both the Grantor Trust and the Grandchildren's Trust. *See Mitchelson Aff.* at Ex. D (Deposition of Peter W. Healey at 8:24-9:4).

admitted that the Grantor Trust did not pay the promissory notes the Grantor Trust utilized to acquire its interest in NCPS/NDVS. *See Mitchelson Aff. at Ex. D (Deposition of Peter W. Healey at 14:7-15:15).* Healey has testified that neither he nor the Grandchildren's Trust[5] paid for their 1/6 interest in Fleet Environmental. *See Mitchelson Aff. at Ex. A (11/29/04 Healey Depo at 160:14-163:12).*

To constitute a cause of action for abuse of process in Massachusetts, it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended or which was not the legitimate purpose the particular process employed. Ladd v. Polidoro, 424 Mass. 196, 675 N.E.2d 382, 383 (1997). The ulterior motive is an essential element when the claim of abuse of process is based solely on the commencement of litigation. Id. at 384. The ulterior motive "usually involves a form of coercion to obtain a collateral advantage in the proceeding itself, similar to extortion." Adams v. Whitman, 62 Mass.App.Ct. 850, 853, 822 N.E.2d 727 (2005).

The Zammitos alleged that the Defendants filed their baseless Counterclaim with the ulterior motive of avoiding their debt responsibilities. *See Third Party Complaint at ¶ 63.* The Defendants have received hundreds of thousands of dollars in financial gain from their ownership of these companies. *See e.g. Mitchelson Aff. at Ex. A (11/29/04 Healey Depo at 155:11-24).* Yet, when the Zammito Children sought remuneration from these Defendants for their lucrative ownership in these companies, the Defendants commenced litigation rather than pay their debt. The Zammitos' allegations of ulterior motive are sufficient to overcome the Motions to Dismiss filed by Peter W. Healey, the Grantor Trust, the Grandchildren's Trust and Stanton Cummings. See Fafard Real Estate

---

[5] According to Healey, he acquired an interest in Fleet Environmental in December 2000. Nearly two years later, in October 2002, Healey claimed to have transferred his interest in Fleet Environmental to the Grandchildren's Trust. *See Healey Aff. at ¶ 93.*

& Development Corp. v. Metro-Boston Broadcasting, Inc., 345 F. Supp.2d 147, 153 (D. Mass. 2004)(allegations of ulterior motive of an attempt to gain leverage in a negotiation sufficient to overcome motion to dismiss). In addition, Healey's express denial that there was any ulterior motive in filing the Counterclaim, juxtaposed against the Zammitos' contention in the Third Party Complaint that an ulterior motive exists[6], is sufficient to create an issue of material fact. Thus, Healey's claim for summary judgment as to Count V of the Third Party Complaint fails.

IV.   *Healey, Peter W. Healey, The Grantor Trust, Stanton Cummings Ltd And The Healey Grandchildren's Trust-II Have Violated G.L. c. 93A.*
       **(Count VII of the Third Party Complaint)**

The calculated decision by Healey, the Grantor Trust, Stanton Cummings and the Grandchildren's Trust not to pay their obligations to the Zammito Children also results in their liability under G.L. c. 93A (hereinafter referred to as "93A"). Mere breach of contract does not, in it of itself, rise to the level of a 93A violation. Whittensville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101, 390 N.E. 2d 243 (1979). Instead, to recover under 93A in a breach of contract situation, the plaintiff must show "conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party." Anthony's Pier IV, Inc. v. HVAC Associates, 411 Mass. 451, 583 N.E. 2d 806, 821 (1991); *see also* Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 598 N.E. 2d 666, 670 (1992) (the breach must have "an extortionate quality that gives it the rancid flavor of unfairness needed for 93A liability.") The First Circuit provides a good example of a case where 93A would be applicable to a breach of contract claim. In Arthur D. Little, Inc. v. Dooyang Corp., 147 F. 3d 47 (1st Cir. 1998), the Court found that the defendant

---

[6] *See e.g. Volume II of the Healey Appendix at Ex. 25 (Robert J. Zammito, Jr.'s Answers to Interrogatories at Answer 10).*

9

intended to breach his contract in order "extract a favorable settlement from [the plaintiff] for less than [the defendant] knew that it owed" by "repeatedly promising to pay, not doing so, stringing out the process and forcing the plaintiff to sue." Id. at 55-56. Based upon such action, the Court found that "the facts were sufficiently strong that we easily conclude they are actionable as 'unfair and deceptive' under 93A." Id.

The evidence has shown that, when it comes to his dealing with the Zammitos, Healey has repeatedly taken actions and made decisions that have only served to benefit him.[7] Thus, the decision not to pay for his interests in the Zammito Children's companies, and his obvious instructions to his various entities to do the same, is in keeping with his selfish mindset. The deliberate decision not to make these payments and file a meritless litigation in the hope that the Zammito Children would retreat from collection of the debt, however, extends this breach of contract into the realm of a 93A violation. See Community Builders, Inc. v. Indian Motorcycle Associates, Inc., 44 Mass App. Ct. 537, 692 N.D. 2d 964, 978 (1998) (defendants "withheld a payment, unconscionably stringing the plaintiff along and with the purpose of coercing the plaintiff to settle for substantially less compensation than the parties had agreed to before the services were performed."). As such, the Motions to Dismiss Count VII of the Zammitos' Third Party Complaint filed by Peter W. Healey, the Grantor Trust, the Grandchildren's Trust and Stanton Cummings lack merit. In addition, the evidence of a genuine issue of material fact surrounding Healey's motive in failing to pay his obligations to the Zammitos moots his claim for summary judgment as to Count VII of the Zammitos' Third Party Complaint.

---

[7] For example, when asked why he requested that his acquisition of NCPS/NDVS be financed with recourse and non-recourse promissory notes, Healey testified that it was his "preference" because "I was only exposed for a third." See Mitchelson Aff. at Ex. A (11/29/04 Healey Depo at 149:14-23).

*V.*     *Healey's Sworn Testimony Vitiates His Motion for Summary Judgment as to the Zammitos' Breach of Contract Claims.*
**(Counts I, II, VIII and VIII (sic) of the Third Party Complaint)**

The Third Party Complaint sets forth five (5) breach of contract claims against Healey. Four of these Counts [I, II, VIII and VIII (sic)] have the same basis; namely that Healey breached the alleged oral agreement with the Zammitos when he failed to pay for his 1/6 interest in certain of the companies that the Zammito Children acquired. Healey now contends that his agreement with the Zammitos was, in fact, with his corporate entity, Stanton Cummings and , therefore, Healey has no individual liability to the Zammitos. As set forth in greater detail below, however, Healey's sworn testimony belies this contention.

>  **A.     According to Healey's testimony the alleged oral agreement with the Zammitos had three parties; Robert J. Zammito, Sr., Healey and Stanton Cummings.**

In his Motion to Dismiss, Healey claims that he has "been at all times consistent in pleadings, interrogatory answers and deposition testimony" in distinguishing between himself and his corporate alter egos. *See Healey Motion at p. 26, n.1.* This argument is in direct contrast, however, to Healey's sworn testimony. When first outlining the agreement that supposedly entitled him to a 1/6 interest in companies the Zammito Children acquired, Healey's affidavit states: "[Robert J. Zammito, Sr.] and I agreed that I would provide contemplated services one day per week on a flexible basis in exchange for. . . an option to purchase (with no time limit) up to one-sixth of the Zammitos investment at Zammito's acquisition cost." *See Healey Aff. at ¶ 49 (emphasis added).* Further bolstering the contention that Healey individually would be obligated to pay for

these 1/6 interests is the fact that Stanton Cummings is only mentioned as the entity "through which I provided financial consulting and related services." *Id.* at ¶ 50.

This alleged oral contract had two distinct components. First, Healey's corporate alter ego, Stanton Cummings, would provide "financial consulting" to the Zammitos in return for which the Zammitos would pay Stanton Cummings $10,000.00 per month. The second component of this alleged oral contract is that Healey would identify new business for the Zammito Children to acquire and help the Zammito Children in negotiating of the purchase of these businesses. *See Healey Aff.* at ¶ 48. In return for this activity, *Healey*, and not Stanton Cummings, would supposedly be paid with a 10% commission and the ability to purchase 1/6 of the business the Zammito Children acquired. *Id.* at ¶ 49. It is the second component of the alleged oral agreement that Healey has violated.

  **B.**  **Healey breached the alleged oral contract because he failed to pay for his interests in the various companies.**

In Count I of their Third Party Complaint, the Zammitos state that Healey failed to pay the full price for his interest in Colornet Graphics. *See Third Party Complaint at ¶ 47.* In response, Healey does not deny the Zammitos' allegation. Instead, he argues, Healey is not individually obligated to pay for this interest in Colornet because the Zammitos "professional and business arrangements were with [Healey's corporate entities] and not Healey as an individual." *See Healey Motion at p. 29.* In direct contravention to this argument, however, Healey made a partial payment towards the acquisition of a 1/6 interest in Colornet from **his own personal checking account.** *See Mitchelson Affidavit at Exhibit G.* Once again, Healey's pre-litigation activities undermine the position he takes in this litigation.

In Count VIII of the Third Party Complaint, the Zammitos allege that Healey acquired a 1/6 interest in NCPS/NDVS without paying for it, thereby breaching the alleged oral agreement. *See Third Party Complaint at* ¶ 77. Instead of denying the Zammitos claim, Healey attempts to misdirect this Court by claiming that the alleged oral agreement was with Healey's corporate alter ego, and not Healey individually. Healey cannot seem to keep this ruse straight in his own mind, however, as his sworn testimony clearly shows he believed he *individually* was entitled to the 1/6 interest in NCPS/NDVS. For example, in discussing the acquisition of NCPS/NDVS in his affidavit, Healey states:

> I agreed from my commission on this transaction until such time as I made the decision to invest in these companies at which time if I invested I intended to use the year-end commission as a credit towards my 1/6 share of Zammitos interest in NCPS/NDVS.

*Healey Affidavit at* ¶54.

The repeated use of the pronoun "I" is echoed in Healey's deposition testimony. When testifying under oath about NCPS/NDVS at his deposition, Healey adamantly claimed he received the interest in NCPS/NDVS:

> All I know is that I ended up buying my share of NCPS/NDVS from the four Zammito children, and I was given --- the stock that I bought was from them.

*See Mitchelson Aff. at Ex. A. (11/29/04 Healey Depo at 147:20-22).*

Clearly, therefore, Healey believes that he individually acquired an interest in NCPS/NDVS. Thus, the breach of contract claim alleging that he individually failed to pay for this interest should remain.

In Count VIII (sic) of the Third Party Complaint, the Zammitos allege that Healey has breached the alleged oral contract by failing to pay for the 1/6 interest he received in

13

Fleet Environmental. Again, Healey's sworn testimony undercuts his summary judgment theory. His sworn testimony is that:

> [in December 2000] I exercised [Stanton Cummings] option and acquired one-sixth of Zammito's interest [in Fleet]. In or about October 30, 2002, I transferred 100% (one hundred percent) of my interest in [Fleet] to the [Grandchildren's Trust]

*See Healey Aff. at ¶ 93 (emphasis added).*

It is clear that Healey believes that he *individually owned* a 1/6 interest in Fleet and his failure to pay for this interest lends factual support to Count VIII (sic) of the Zammitos' Third Party Complaint. Therefore, summary judgment as to this Count is inappropriate.

VI.  *Healey's Arguments In Support of Summary Judgment as to Count III of the Zammitos' Third Party Complaint Lack Merit.*

In Count III of their Third Party Complaint, the Zammitos allege that Healey's faulty supervision of the Medicare billing for Zam-Cul, Inc. d/b/a Norfolk-Bristol County Ambulance Service ("Norfolk-Bristol") resulted in the Zammitos having to settle a claim alleged by the United States' Attorney. *See Third Party Complaint at ¶ 53 and 59.* Healey makes four arguments in support of his summary judgment claim as to Count III: 1) the claim is untimely; 2) the Zammitos lack standing; 3) the Zammitos suffered no damage and 4) there is no evidence of a breach of contract. As set forth below, none of these arguments entitle Healey to summary judgment as to Count III of the Third Party Complaint.

A.  **The Zammitos timely filed their breach of contract claim.**

The question of whether a plaintiff knew, or should have known, that cause of action is one fact to be decided by the trier of fact. Taygeta Corp. v. Varian Associates,

436 Mass. 217, 229, 763 N.E. 2d 1053 (2002). Healey's attempt to invoke summary judgment in a statute of limitations context is legally misguided. Moreover, the "facts" upon which Healey bases his summary judgment claim are inaccurate and the subject of a genuine dispute.

Healey alleges that any cause of action relating to his activities at Norfolk-Bristol would have accrued by "September 26, 1996." *See Healey Motion at p. 38.* This claim is factually incorrect. It is true that the United States' Attorney began investigating a successor corporation to Norfolk-Bristol, American Medical Response, Inc. ("AMR"), in 1996. The focus of the United States' investigation of AMR in 1996, however, was Chaulk Ambulance's Medicare billing for 1993-1994. *See Volume II of Healey Appendix at Ex. 19, p.3.* Healey has acknowledged under oath that Norfolk-Bristol did not merge with Chaulk until 1995. *See Healey Affidavit at ¶34 and 41.* Therefore, the United States' Attorney's investigation of Chaulk's 1993-1994 Medicare billing would not have implicated the Zammitos. Thus, Healey would not have been in breach of his contract with the Zammitos in 1996.

According to the Settlement Agreement, the United States' Attorney did not begin investigating Norfolk-Bristol until after former employees of Norfolk-Bristol filed a "qui tam" action in October 1998. *See Volume II of Healey Appendix at Ex. 19, p.3.* Thus, the United States' Attorney's investigation of Norfolk-Bristol in the fall of 1998 is the event that triggered the statute of limitations for Healey's breach of contract. Because the Zammitos filed the breach of contract claim against Healey in April 2004, the claim is timely. *See G.L. c. 260 § 2 ("Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, shall, except as

15

otherwise provided, be commenced only within **six years** next after the cause of action accrues)(emphasis added). Therefore, Healey's claim that Count III is untimely fails as a matter of law.

    **B.    The Zammitos have standing to prosecute this breach of contract claim.**

                  i.    <u>The Zammitos were the party that suffered the injury from Healey's breach of contract.</u>

Healey's belief that the Zammitos lack standing to prosecute this breach of contract claim also strains legal credulity. To have standing to bring a claim, "a litigant must show that the challenged action has caused him or her actual injury." <u>Slama v. Attorney General</u>, 384 Mass. 620, 624, 428 N.E.2d 134 (1981). As set forth in the Third Party Complaint, because of Healey's negligent supervision of the Medicare billing, the Zammitos were forced to settle with the United States Attorney. *See Third Party Complaint at ¶ 59.* The settlement with the United States Attorney was paid by the escrow fund that had been established when AMR acquired the Zammitos' ambulance company. *Id.* At the time of the settlement[8], the Zammitos' owned over 40% of the escrow fund and Norfolk-Bristol was no longer in existence. *See Mitchelson Aff. at Ex. H.* Thus, the Zammitos, and not Norfolk-Bristol, were the ones damaged by Healey's failure to properly supervise the Medicare billings. As they were the parties that suffered the "actual injury"[9] that resulted from Healey's breach of contract, the Zammitos have standing to pursue the claim. Accordingly, Healey's request for summary judgment as to Count III of the Third Party Complaint must be denied.

---

[8] The settlement was paid in or around June of 2002. *See Volume II of the Healey Appendix at Ex. 19.*

[9] <u>Slama</u>, *supra.*

16

> ii. <u>The Zammitos have representative standing to assert the breach of contract claim because Norfolk-Bristol was no longer in existence when Healey's breach of contract was discovered.</u>

Even if the Zammitos were not party to the contract with Healey (a material fact which is in dispute), they still would have representative standing to enforce the contract. Representative standing accrues when "it is difficult or impossible for the actual rightholders to assert their claims." <u>Slama</u>, *supra*. Norfolk-Bristol ceased operations in 1995 when it was merged with Chaulk. *See Healey Aff. at ¶ 34 and 41.* Thus, it would be "impossible" for Norfolk-Bristol to assert its breach of contract claim claims against Healey when the breach occurred in 1998.[10] With Norfolk-Bristol defunct, it would fall to the Zammitos as the sole shareholders of Norfolk-Bristol to assert the breach of contract claim against Healey. Therefore, the Zammitos would have representative standing even if they were not personally damaged by Healey's breach. Healey's request for summary judgment as to Count III of the Third Party Complaint should be denied.

**C. Whether there is "competent evidence" to support Count III of the Third Party Complaint is still a matter of genuine dispute.**

Healey fails to grasp the idea of "undisputed" material facts with his allegation that summary judgment should enter in his favor with regard to Count III because there is "no competent evidence to support" it. *See Healey Motion at p. 51.* Healey maintains that he was not involved in the Medicare billing at Norfolk-Bristol. In contrast, the Zammitos testified that he was involved in the Medicare billing at Norfolk-Bristol. Robert J. Zammito, Sr. testified that he hired Healey because Healey had held himself as having knowledge of Medicare billing stemming from his duties at South Shore Hospital. *See Mitchelson Aff. at Ex. B (11/11/04 Deposition of Robert J. Zammito, Sr. at 47:3-15).*

---

[10]This would be true even under Healey's unrealistic accrual date of September 1996.

17

Robert J. Zammito, Jr. confirmed his father's testimony. *See Mitchelson Aff. at Ex. C (Deposition of Robert J. Zammito, Jr. at 65:2-4)*. Both Zammitos further testified that Healey was intimately involved with the Medicare billing while at Norfolk-Bristol. *See Mitchelson Aff. at Ex. B (11/11/04 Deposition of Robert J. Zammito, Sr. at 48:18-22); see also Mitchelson Aff. at Ex. C (Deposition of Robert J. Zammito, Jr. at 64:20-65:15)*. Healey has not introduced evidence that converts the Zammitos' sworn testimony. Therefore, at a minimum, there remains a dispute as to the material facts surrounding Healey's involvement in the Medicare billing at Norfolk-Bristol and summary judgment as to Count III is inappropriate.

## CONCLUSION

The foregoing demonstrates that the Motions to Dismiss are legally and factually flawed. As such, the should be denied.

**WHEREFORE,** Robert J. Zammito, Jr., Paul M. Zammito, Christopher Zammito, Valarie A. Mordini, Robert J. Zammito, Sr., Valerie L. Zammito, ASA Holdings, Inc. and ASA Holdings LP respectfully request that this Court enter an order:

1. Denying the Motion for Judgment on the Pleadings and/or to Dismiss as to John A. Malloy, III; and

2. Denying the Motion for Judgment on the Pleadings and/or to Dismiss as to Harry W. Healey, Jr. Grantor Trust; and

3. Denying the Motion for Judgment on the Pleadings and/or to Dismiss as to Healey Grandchildren's Trust-II; and

4. Denying the Motion for Judgment on the Pleadings and/or to Dismiss as to Peter W. Healey; and

5. Denying the Motion for Judgment on the Pleadings and/or to Dismiss as to Huntington Forbes Ltd.; and

6. Denying the Motion for Judgment on the Pleadings and/or to Dismiss as to

      as to Stanton Cummings Ltd.; and

7. Denying the Motion for Summary Judgment and/or to Dismiss Counterclaims as to Harry W. Healey, Jr.; and

8. For such other and further relief as this Court deems just and proper.

ROBERT J. ZAMMITO, JR., et al.,
By their attorneys,

_____
Kevin M. Considine (BBO #542253)
Timothy M. Mitchelson (BBO #630331)
Kevin M. Considine, P.C.
One Boston Place – 28th Floor
Boston, MA 02108
617-723-9900

Dated:  June 20, 2005

**REQUEST FOR ORAL ARGUMENT**

    As per Rule 7.1(D), the Plaintiffs and Third-Party Defendants request an oral argument on the basis that oral argument may assist the Court.

**CERTIFICATE OF SERVICE**

    I, Timothy M. Mitchelson, hereby certify that I have this 20th day of June 2005, served a copy by hand delivery of the foregoing to Stephen J. Lyons, Esq., Kleiman, Lyons, Schindler & Gross, 21 Custom House Street, Boston, Massachusetts 02110.

_____
Timothy M. Mitchelson
