UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10161-REK

ROBERT J. ZAMMITO, JR., )
PAUL M. ZAMMITO, )
CHRISTOPHER ZAMMITO and )
VALARIE A. MORDINI, )
    Plaintiffs, )
        v. )
HARRY W. HEALEY, JR., GRANTOR TRUST )
and PETER W. HEALEY, as Trustee of )
HARRY W. HEALEY, JR., GRANTOR TRUST, )
    Defendants )
 )
HARRY W. HEALEY, JR., individually, and as )
Trustee of THE HUNTINGTON FORBES )
CHARITABLE REMAINDER TRUST, )
HUNTINGTON FORBES, LTD., )
STANTON CUMMINGS, LTD., )
PETER W. HEALEY, as Trustee of )
THE HEALEY GRANDCHILDREN'S TRUST – II, )
    Third-Party Plaintiffs, )
    Third-Party Defendants in Counterclaim )
        v. )
ROBERT J. ZAMMITO, SR., )
VALERIE L. ZAMMITO, )
ASA HOLDINGS, INC., and )
ASA HOLDINGS LP, )
    Third-Party Defendants, )
    Third-Party Plaintiffs in Counterclaim, )
        and )
    Third-Party Plaintiffs, )
        v. )
JOHN A. MALLOY, III and )
WILLIAM R. HEALEY, )
    Third-Party Defendants )
 )
MELLON BANK )
(a/k/a Mellon Trust of New England), )
    Bank Trustee. )

**PLAINTIFFS' AND THIRD PARTY DEFENDANTS' REPLY TO DEFENDANTS' "OPPOSITION TO PLAINTIFFS AND THIRD-PARTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT"**

The Plaintiffs and Third Party Defendants, Robert J. Zammito, Jr., Paul M. Zammito, Christopher Zammito, Valarie A. Mordini, (the "Zammito Children") Robert J. Zammito, Sr., Valerie L. Zammito (collectively the "Zammitos"), ASA Holding Co., Inc. and the ASA Holdings L.P. submit this reply to the "Opposition to Plaintiffs and Third Party Defendants' Partial Motion for Summary Judgment" (the "Opposition") filed by Harry W. Healey, Jr., Individually ("Healey"), and as Trustee of the Huntington Forbes Charitable Remainder Trust, Huntington Forbes, Ltd., Stanton Cummings, Ltd., Peter W. Healey, as Trustee Of The Healey Grandchildren's Trust II, and as Trustee of Harry W. Healey, Jr., Grantor Trust (the "Grantor Trust")(collectively "the Defendants").

As set forth in greater detail below, the Defendants have raised new legal claims in the Opposition relating to their RICO allegations. These new RICO claims are an untimely attempt to amend the Counterclaim and Third Party Complaint; and, in any event, fail as a matter of law.

## ARGUMENT AND AUTHORITIES

I.  *Brief Background*

In response to the Zammito Children's complaint to enforce promissory notes, the Defendants submitted a fifty count Counterclaim and Third Party Complaint in which they accused each of the Zammitos of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In support of their RICO allegation, the Defendants cited six (6) alleged "predicate acts" of mail and wire fraud. *See e.g. Counterclaim and Third Party Complaint at ¶ 140.*

The parties submitted a Joint Statement to the Court on March 25, 2004 wherein the parties agreed that no motions to amend the pleadings would be permitted after July

1, 2004. *See Joint Statement* at ¶ 2. The Defendants did not seek to amend their Counterclaim and Third Party Complaint.

In their Opposition, the Defendants now allege that the Zammitos have engaged in "at least 121 separate predicate acts." *See Opposition at p. 105.* In addition to wire and mail fraud, the Defendants now allege that the Zammitos engaged in the following "predicate acts":

- interstate transportation of fraudulently obtained funds;
- tax evasion;
- submitting false income tax returns;
- embezzlement;
- extortion;
- threats of economic harm; and
- unlawful debt collection activities.

*Id.*

The Court should disregard these new allegations in deciding whether to enter summary judgment in favor of the Zammitos as to the Defendants' RICO claim because they are both an impermissible amendment to the Counterclaim and Third Party Complaint and are based on an improper reading of the law.

II.   *The Predicate Acts Alleged In The Opposition Are Nothing More Than The Defendants' Attempt To Amend Their Counterclaim And Third Party Complaint Because These New Predicate Acts Are Based Upon Documentation and Information In The Defendants' Possession Prior To The Deadline To Amend The Pleadings.*

In their Opposition, the Defendants allege that the management fees that NCPS/NDVS and Fleet paid to the Zammito Children constitute embezzlement. *See*

3

*Opposition at p. 110.* According to their Counterclaim and Third Party Complaint, however, the Defendants have been aware of these management fees since "in or about September 2001." *Counterclaim and Third Party Complaint at ¶ 100.* Therefore, any claim of embezzlement relating to the management fees should have been brought by the time the Defendants filed their Counterclaim and Third Party Complaint. Because the Defendants' failed to allege embezzlement in a timely manner, this Court should not consider embezzlement as predicate act in deciding whether to enter summary judgment in favor of the Zammitos as to the Defendants' RICO allegations.

The Defendants also allege that the Zammitos engaged in the predicate acts of "extortion," "threats of economic harm," and "unlawful debt collection activities." *See Opposition at p. 111.* In support of these claims, the Defendants primarily cite to a March 12, 2003 letter from Kevin Martin to Harry Healey. This exact same letter was also the basis for the Defendants' claim of mail and wire fraud in the Counterclaim and Third Party Complaint. *See e.g. Counterclaim and Third Party Complaint at ¶ 140(5).* Nowhere in the Counterclaim and Third Party Complaint, however, do the Defendants claim that this letter is also evidence of "extortion," "threats of economic harm," and "unlawful debt collection activities." The Defendants are simply trying to bolster their weak RICO claim by stockpiling new legal theories onto the same old factual allegations. As such, this Court should not consider these new claims as predicate acts in deciding whether to enter summary judgment in favor of the Zammitos as to the Defendants' RICO allegations.

4

*III.    Even If These New Predicate Acts Were To Be Considered, Summary Judgment As to the RICO Claims Would Still Enter In The Zammitos' Favor.*

The same liability that has plagued the Defendants' RICO claims would continue even if they were allowed to raise new legal theories; namely that the factual allegations that form the basis of the RICO claim are unsupported by the law. Therefore, regardless of the Defendants' new legal theories, summary judgment should enter in the Zammitos' favor as to the RICO claims.

    **A.    The claim of extortion lacks merit because there has been no proof of that the Zammitos' intended to mislead the Defendants regarding the management fees.**

To prove embezzlement, evidence must establish that a defendant "fraudulently converted" to his personal use property of another that was under his control by virtue of a position of "trust or confidence" and did so with the intent to permanently deprive the owner of the property. G.L. c. 266, §30; *see also* Commonwealth v. Mills, 436 Mass. 387, 394, 764 N.E.2d 854 (2002). In embezzlement claims, where the inference of intent to steal or defraud is warranted, there must be "some evidence of an affirmative effort to mislead the owner of the property." Commonwealth v. Moreton, 48 Mass.App.Ct 215, 217-218, 719 N.E.2d 509 (1999).

The Defendants base their embezzlement claim on the fact that NCPS/NDVS and Fleet paid management fees to the Zammito Children. *See Opposition at 109.* These management fees, however, were clearly stated in the year-end financial statements of these companies. *See e.g. Appendix to Opposition, Volume II, Exhibits 68-71 (NCPS/NDVS Financial Statements).* Moreover, Healey has testified that he received and reviewed NCPS/NDVS's financial statements on a monthly basis from 1996 to 2002. *See*

5

*Appendix to Opposition, Volume III, Exhibit 87 (11/30/04 Healey Depo at 79:2-80:14).*
Clearly, therefore, the Zammito Children were not trying to mislead the Defendants regarding the management fees. Instead, they were openly acknowledging to all who reviewed these companies' financial records (such as Healey) that management fees were being paid and that the Zammito Children felt they were appropriate. Without "evidence of an affirmative effort to mislead,"[1] the Defendants' embezzlement claim fails as a matter of law.

> **B.    Both the federal and state extortion claims fail because there is no evidence that the Defendants paid any money to the Zammitos.**

The Defendants contend that the Zammitos extorted money from them. This claim is the height of irony because, if the Defendants had ever paid the Zammito Children for their lucrative ownership interests, it is doubtful that there would have been litigation. Regardless, as set forth below, the Defendants' fail as a matter of law to establish their claims of "extortion," "threats of economic harm," and "unlawful debt collection activities."

The Hobbes Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear or color of official right." *18 U.S.C. §1951.* The "fear" referred to in the Hobbes Act may be economic fear (i.e. a threat of economic harm). George Lussier Enterprises, Inc. v. Subaru of New England, Inc., 393 F.3d 36, 50 (1st Cir. 1994). Yet, a threat of economic harm, unlike the threat of physical harm, is not *per se* wrongful. United States v. Kattar, 840 F.2d 118, 123 (1st Cir. 1988). Instead, a threat of economic harm is only wrongful if "the defendant has no claim of right to that property." United States v.

---
[1] Moreton, *supra*

6

Strum, 870 F.2d 769, 773 (1st Cir. 1989). A "straight forward example of a lawful economic threat is where one party threatens litigation in order to persuade another to honor a contract, which the first party believes has been breached." Kattar, *supra*.

Unlike The Hobbes Act, which allows for a blending of physical and economic threat, Massachusetts law separates the two into distinct statutes. Extortion under the Massachusetts statute requires showing "(1) a malicious threat (2) made to a named person (3) of personal injury to someone (4) with the intent to extort money." G.L. c. 265, § 25; Commonwealth v. Snow, 269 Mass. 598, 608, 169 N.E. 542 (1930). The difference between a claim of extortion (G.L. c. 265, § 25) and a claim of threat of economic harm (G.L. c. 271, § 39) under Massachusetts law is the object of the threatened harm. Extortion is aimed at personal injury while the threat of economic harm is directed at economic injury. Holmes Products Corp. v. Dana Lighting, Inc., 958 F.Supp. 27, 34 (D. Mass. 1997), *citing*, Commonwealth v. Schafer, 32 Mass.App.Ct. 682, 689, 594 N.E.2d 875 (1992).

As set forth above, the Defendants' sole factual support for their extortion and threat of economic harm claim stems from letters from Kevin Martin to Healey requesting that he re-execute promissory notes to evidence his debt-financed purchase of an interest in Fleet. This letter cannot give rise to an federal law extortion claim because the Defendants never acquiesced to the Zammitos' supposed demands. Indeed, Healey adamantly refused to re-sign these promissory notes and has never paid anything for his interest in Fleet. Therefore, because the Zammitos did not obtain any property from the Defendants, their claim of extortion pursuant to the Hobbes Act claim fails as a matter of law.

The Defendants' state law extortion claim fails as well. The Defendants have failed to supply any evidence that the Zammitos threatened them with physical injury. As such, no claim for extortion under G.L. c. 265, § 25 can be shown.

Finally, the Defendants' claim of "threat of economic harm" pursuant to G.L. c. 271, § 39 also fails as a matter of law. The sole reason for Martin's request that Healey execute these promissory notes is little more than a bookkeeping issue. Indeed, it is improper for Healey to allocate any losses from ownership of Fleet unless there is evidence that he actually possessed the risk inherent in such ownership. *See Appendix to Opposition, Volume III, Exhibit 86 (11/29/04 Healey Depo at 162:20-165:2)*. There is no evidence that Martin's request in his March 12 letter amounts to a crime.[2] Thus, there is no legal support for the Defendants' claim of "threat of economic harm" pursuant to G.L. c. 271, § 39.

---

[2] *Contrast* Schafer, *supra* where the Appeals Court found evidence of a "threat of economic harm" where, aware of the victim's financial difficulties, the defendant threatened to delay a business loan unless the victim paid the defendant a sum of money in excess of that required by the lending bank. Schafer, 32 Mass.App.Ct at 691.

## CONCLUSION

The Defendants' use of the Opposition to revive their legally defective RICO claims with new legal theories should be disregarded and summary judgment as to the RICO claims should enter in the Zammitos' favor.

ROBERT J. ZAMMITO, JR., et al.,
By their attorneys,

Kevin M. Considine (BBO #542253)
Timothy M. Mitchelson (BBO #630331)
Kevin M. Considine, P.C.
One Boston Place – 28th Floor
Boston, MA 02108
617-723-9900

Dated: July 5, 2005

## CERTIFICATE OF SERVICE

I, Timothy M. Mitchelson, hereby certify that I have this 5th day of July 2005, served a copy by hand delivery of the foregoing to Stephen J. Lyons, Esq., Kleiman, Lyons, Schindler & Gross, 21 Custom House Street, Boston, Massachusetts 02110.

Timothy M. Mitchelson